STATE OF MAINE
PENOBSCOT, SS.

FILED & ENTERED
SUPERIOR COUR ‖HIRD DISTRICT COURT, BANGOR, ME
BAN DC  Docket No. CV-04-434
MAY 2 5 2006
PENOBSCOT COUNTY

THE GREENWORKS, INC.,                    )
                    Plaintiff,           )
                                         )
                                         )
            v.                           )          **DECISION AND JUDGMENT**
                                         )
                                         )
ROBERT M. MUTTY,                         )
                    Defendant.           )

Plaintiff commenced this action seeking a lien (Count I of the Complaint) and judgment (Count II of the Complaint) in the amount of $6,082.69 for goods and services rendered in landscaping work on the Defendant's property in Brewer, Maine. Defendant's Counterclaim alleges violation of the Home Construction Contract Act, 14 MRSA §1490, et seq. (Count I), violation of the Unfair Trade Practices Act, 5 MRSA §205-A, et seq. (Count II), breach of contract (Count III), Breach of Implied Warranty (Count IV), and negligence (Count V). Upon these theories, he seek recovery in the amount of $21,747,75 plus attorney's fees, penalties, costs and interest. A trial was held on April 5 and 6, 2006. The courts findings and conclusions are noted below.

## FINDINGS

In or about June, 2004, James Bessey (the Defendant's agent and partner) and William Bruns (the President and principal of the Plaintiff) entered into discussions regarding landscaping to be performed at the Defendant's residence in Brewer. Bessey showed Bruns the property and briefly described the work to be performed. A figure of $17,000 was first proposed and later modified to $16,000.

Unfortunately the precise nature of the work to be performed for this contract price is poorly defined. Plaintiff asserts that the contract price was specifically limited to building a 1.5' stone wall by the pool toward the house and turning toward the garage and stopping at the garage, building a wall on the rear of the property (hemlock was later substituted for stone), building a stone wall from the rear wall and extending to the rear of the house and ending at the left side, and removing soil and adding fill. Bessey provided the Plaintiff with a "punch list" at the start of the job which summarized his expectations. The parties now offer notably different descriptions of the work which was ostensibly covered under the contract. Further, even if changes or additions were added after the fact, the record is devoid of any agreement on the manner or amount of payment for such changes or additions.[1]

---

[1] The "estimate" which was used as documentation for the lien enforcement proceeding was apparently not seen by Bessey or Mutty prior to legal action being instituted. Indeed, it appears to have been prepared expressly for the lien proceeding.

This unhappy situation is precisely the circumstance which the Home Construction Contracts Act is intended to avoid. Clearly defined expectations and prices would have added needed clarity to the parties' understandings. However, the court is satisfied that the Home Construction Contracts Act is limited, by its terms to structures and appurtenances. See 10 MRSA §1486(4). Judgment must be entered in favor of the Plaintiff on this aspect of Defendant's Counterclaim.

Work commenced in July, 2004. Land was excavated and filled, drainage was installed, and several stone walls were constructed. Bessey and Bruns were both present for the vast majority of the construction process. Although Bessey now claims to have had misgivings about the manner and quality of work being done at the time, he never communicated any significant dissatisfaction to Bruns regarding the acceptability of the work performed.[2] Changes and modifications were made during the process of the work. It was never established whether the changes or additions were to fall within the original contract price. No additional prices or pricing schemes were discussed or agreed upon.

As far as Bruns knew when he left the site on July 27, 2004, the work had been performed satisfactorily to that point in time. He understood that a fence would be installed on the property and he would return and install a layer of loam, grade and seed. When he did not receive a call-back, he telephoned Bessey on several occasions but received no return call. His next communications were from Defendant's lawyer advising him that his company's services were no longer needed. Defendant has paid $12,000 to the Plaintiff. Plaintiff seeks the remainder of the contract price ($4000) plus $2082 for additional work done beyond the alleged contract terms. Lien notices were filed and his lawsuit followed.

Defendant, through Paul Bessey, complains that Plaintiff's work was flawed. He asserts that he did not receive what he bargained for and has incurred significant costs to correct and complete Plaintiff's work. Defendant asserts several discrete problem areas which existed after the Plaintiff's departure:

(a) the wall (Defendant's Exhibit #5) which was leaning. Defendant complains that the Plaintiff failed to sufficiently bury the bottom course of stone, that the site was improperly prepped (no geogrid), and that the curved portions were improperly constructed.

(b) Water was pooling on the property because the Plaintiff installed clay fill

(c) The property had extensive ruts and damage.

(d) The property was not properly graded.

(e) The lawn was not loamed, sodded, or seeded.

---

[2] Bessey found Bruns to be an intimidating individual whom he had difficulty approaching.

The Defendant faults the Plaintiff's construction techniques alleging that he did not use a transit, used inexperienced workmen, workmen would "eyeball" lines, that geogrid was not used throughout, that an inexperienced individual operated machinery, that clay fill was used (and caused pooling of water), that the landscaping stones were installed improperly ("crack-on-crack" and split), lack of compaction of materials, etc.

Bruns replies that all of the problems would have been resolved (1) by the fact that he would be returning and regrading, loaming, repairing and seeding, and (2) he offers an unconditional guarantee on his work, but was never given to opportunity to make things right because he was never advised of problems.

After severing his ties with Bruns, the Defendant contacted other contractors to remedy the situation. Mitchell's Landscaping Service was engaged to repair, refill (replacing the clay fill with loam and gravel), regrade, and hydroseed the property. Invoices for $4744 and $5233 for these services were rendered and paid by Defendant. An estimate from Mitchell's for repair of the fence (#2) in the amount of $8042.75 was rendered. An estimate from the Brewer Fence Company was obtained for the repair of the fence in the amount of $1577.[3] An estimate was received for proposed work on land owned by the City of Brewer.

## CONCLUSIONS

### The Wall

The problems with the wall(s) can be traced in large part to the use of the Allen Block landscaping stone blocks and the construction techniques which were utilized to install them. Although they were Bessey's choice, if they were so unsatisfactory, Plaintiff had the obligation to alert Defendant to the problems (and unsatisfactory results) which would be created by their use. Further, the failure to adequately bury the foundation blocks and to use (in some instances) the Geo-Grid underlayment seriously undermined the stability of wall #2. The photographs aptly display the unacceptable results. The wall is separating, tilting, unstable, and unsightly. It needs to be fully removed and reconstructed upon an appropriate foundational base. Although Plaintiff offers to unconditionally guarantee his work (i.e. – he would return and reconstruct it until it is satisfactory), the Defendant's expectation that it would be done properly the first time is not unreasonable. The profoundly flawed nature of the wall is so evident that Defendant is justified in concluding that a second "go" at repair by the same entity which constructed in the first place would be unlikely to produce a completely satisfactory result. Judgment will be granted in favor of the Defendant on Counts IV and V of the Counterclaim in the amount of $8042.75.

---

[3] Adam Cyr of Brewer Fence testified that the recently installed cedar fence was tipping because of the materials which the Plaintiff had installed in the ground and the effect of the stone wall.

## Landscaping, Fill, and Repair

The court finds Plaintiff's explanation of the use of clay soil to underlay the loam topsoil to be credible. It would route water to the rear of the property without saturating the upper portions of the lawn. The placement of additional loam and fill on top of the clay soil would have accomplished the parties' objectives in creating the final grade and appearance, but Plaintiff was prevented from completing this portion of the work. Accordingly, the court declines to enter judgment for the Defendant on his Counterclaim on the Mitchell's Landscaping invoices for fill removal, replacement, and repair.

## The Fence

The court finds that the integrity of the fence was undermined by the Plaintiff's use of materials and techniques in the stone wall construction and fill operation. It needs to be repaired. Although the Brewer Fence estimate ($1577) seems intuitively high, the court cannot say it is unreasonable upon this evidence. Judgment will be granted in favor of the Defendant on Counts IV and V of the Counterclaim in the additional amount of $1577.

## "Contract" work

The parties agreed upon a single contract price for work to be done. Although the exact nature of each and every item of work cannot be ascertained with certainty at this point, the court is satisfied that the Plaintiff completed the vast majority of the work (without receiving complaints regarding any of it) at the time he was ordered off the job. Although the court might be amenable to subtracting from the contract price the value of the few items left undone at the time of the "stop work" order, the evidence does not provide sufficient information to do so. In any event, as the court considers the Defendant's action to constitute a preemptory breach at that point, the Plaintiff is entitled to receive the full contract price (plus additional work) as reflected in the invoice attached to the Lien Notice.

## JUDGMENT

Plaintiff is entitled to the contract price and the cost of supplemental work. Accordingly, Judgment is rendered in favor of the Plaintiff on the Complaint in the amount of $6082.69. A lien Judgment (which may be submitted by the Plaintiff) is approved. Judgment is rendered in favor of the Plaintiff on the Counts I, II, and III of the Counterclaim. Judgment is rendered in favor of the Defendant on Counts IV and V of the Counterclaim in the amount of $9619.75. No attorneys fees, costs or interest are awarded.

The Clerk may incorporate this Order upon the docket by reference.

Dated: May 25, 2006

Andrew M. Mead
JUSTICE, MAINE SUPERIOR COURT
SITTING IN MAINE DISTRICT COURT

THE GREENWORKS INC - PLAINTIFF
1786 UNION STREET
BANGOR ME 04401
Attorney for: THE GREENWORKS INC
J HILARY BILLINGS - RETAINED 11/04/2004
LAW OFFICE J. HILARY BILLINGS
75 PEARL ST, SUITE 201
PORTLAND ME 04101

**DOCKET RECORD**

vs
ROBERT M MUTTY - DEFENDANT
50 BIRCHWOOD DRIVE,
BREWER ME 04412
Attorney for: ROBERT M MUTTY
MARVIN GLAZIER - RETAINED
VAFIADES BROUNTAS & KOMINSKY
23 WATER STREET
PO BOX 919
BANGOR ME 04402-0919

Filing Document: COMPLAINT                    Minor Case Type: CONTRACT
Filing Date: 11/04/2004

## Docket Events:
11/04/2004 FILING DOCUMENT - COMPLAINT FILED ON 11/04/2004

11/04/2004 Party(s):  THE GREENWORKS INC
          ATTORNEY - RETAINED ENTERED ON 11/04/2004
          Plaintiff's Attorney: J HILARY BILLINGS

11/18/2004 Party(s):  ROBERT M MUTTY
          SUMMONS/SERVICE - ACK OF RECEIPT OF SUMM/COMP SERVED ON 11/11/2004
          SIGNED BY ATTY MARVIN GLAZIER.

11/18/2004 Party(s):  ROBERT M MUTTY
          SUMMONS/SERVICE - ACK OF RECEIPT OF SUMM/COMP FILED ON 11/17/2004
          Plaintiff's Attorney:  J HILARY BILLINGS

12/06/2004 Party(s):  ROBERT M MUTTY
          RESPONSIVE PLEADING - ANSWER & AFFIRMATIVE DEFENSE FILED ON 12/03/2004
          Defendant's Attorney: MARVIN GLAZIER

12/06/2004 Party(s):  ROBERT M MUTTY
          RESPONSIVE PLEADING - COUNTERCLAIM FILED ON 12/03/2004
          Defendant's Attorney: MARVIN GLAZIER

12/06/2004 Party(s):  ROBERT M MUTTY
          ATTORNEY - RETAINED ENTERED ON 12/03/2004
          Defendant's Attorney: MARVIN GLAZIER

12/20/2004 Party(s):  THE GREENWORKS INC
          RESPONSIVE PLEADING - REPLY/ANSWER TO COUNTERCLAIM FILED ON 12/15/2004
          Plaintiff's Attorney:  J HILARY BILLINGS